

JUDGE CROTTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------

**TZ MANOR, LLC; PONDVIEW CORP.;**
**and PARKFIELD PROPERTIES** (as assignee
of **EXCHANGE AUTHORITY LLP**, Trustee of
the Almeida Parkfield Exchange Trust),
as Tenants in Common,

                    Plaintiffs,

    -against-

**RICHARD F. DAINES, M.D.,** Commissioner
of the New York State Department of Health;
**ROBERT P. DOUGHERTY, Director of the**
**New York State Department of Health, Division**
**of Home and Community Based Care;**
**JUDITH R. MOONEY, Co-Director of the**
**New York State Department of Health, Division**
**of Home and Community Based Care;**
**MARYBETH FADER, Director, ACF CON**
**Certification Unit of the New York State**
**Department of Health, Division of Home and**
**Community Based Care; KEVIN MAHON,**
**Commissioner of the New York State**
**Department of Social Services;**
**ALAN J. LAWITZ, ESQ., Associate Attorney, Bureau**
**of House Counsel, New York State Department**
**of Health and THE LONG HILL ALLIANCE**
**COMPANY, INC.,**

                    Defendants.
--------------------------------------------------------------

RECEIVED
APR 02 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Index No. _____

**COMPLAINT**
**and JURY DEMAND**

Plaintiffs, by their attorneys, **THE LAW OFFICES OF SANFORD F. YOUNG, P.C.,**

allege as their Complaint against Defendants, the following:

## INTRODUCTION

1.      This is a civil rights action under the Fourth, Fifth and Fourteenth Amendments to

the United States Constitution and 28 U.S.C. §1983 to recover for the unlawful taking and deprivation of property by Defendants with respect to an Adult Home known as Tappan Zee Manor located at 51 Mountainview Avenue, Nyack, New York 10960.

2.    The "State Defendants," acting under color of state law, exceeded their powers and authority, participated in and failed to comply with a duly obtained Court Order and otherwise violated Plaintiffs' property rights when Defendants forced Plaintiffs to cede the occupation, operation, revenue and fees of their property to The Long Hill Alliance Company, Inc., ("Long Hill") after Long Hill's receivership was lawfully and judicially terminated by the State Supreme Court in Westchester County.

## JURISDICTION

3.    The original jurisdiction of this Court is based upon 28 U.S.C. § 1331(3) in that this is a civil action by Plaintiffs to redress the deprivation, under color of state law, statute, ordinance, regulation, custom and/or usage, of rights and privileges secured by the United States Constitution.

4.    The jurisdiction of this Court is also based upon the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

### The Parties

*Plaintiffs*

5.    At all times hereinafter mentioned herein and at the present time, Plaintiff **TZ MANOR, LLC** ["**TZ Manor**"] has been and is a Limited Liability Company organized and existing under the laws of the State of New York.

6.    At all times hereinafter mentioned herein and at the present time, Plaintiff

2

**PONDVIEW CORP. ["PONDVIEW"]** has been and is a corporation organized and existing under the laws of the State of New York.

7.      At all times hereinafter mentioned herein and at the present time, Plaintiff **PARKFIELD PROPERTIES ["PARKFIELD"]** has been and is a partnership organized and existing under the laws of the State of New York.

8.      Upon information and belief, at all times hereinafter mentioned herein and at the present time, **EXCHANGE AUTHORITY LLP**, has been and is a Limited Liability Partnership organized and existing under the laws of the Commonwealth of Massachusetts.

9.      At all times hereinafter mentioned herein and at the present time, the Almeida Parkfield Exchange Trust has been and is an Irrevocable Trust created under a declaration of trust and organized and existing under the laws of the Commonwealth of Massachusetts.

10.      At all times hereinafter mentioned herein and at the present time, the **EXCHANGE AUTHORITY LLP** has been and is a Trustee of the Almeida Parkfield Exchange Trust.

*Defendants*

11.      Defendant, the **STATE of NEW YORK DEPARTMENT OF SOCIAL SERVICES ["DSS"]** is a governmental arm and department of the **STATE of NEW YORK** pursuant to Social Services Law Article 2, as authorized by Article 17, Section 3 of the State Constitution.

12.      Defendant, the **STATE of NEW YORK DEPARTMENT OF HEALTH ["DOH"]** is a governmental arm and department of the arm of the **STATE of NEW YORK** pursuant to Public Health Law Article 2, as authorized by Article 17, Section 3 of the State Constitution.

13.      At all times hereinafter mentioned herein and at the present time, Defendant

3

**RICHARD F. DAINES, M.D.,** has been and is the Commissioner of the New York State Department of Health.

14.     At all times hereinafter mentioned herein and at the present time, Defendant **ROBERT P. DOUGHERTY** has been and is the Director of the New York State Department of Health, Division of Home and Community Based Care.

15.     At all times hereinafter mentioned herein and at the present time, Defendant **JUDITH R. MOONEY** has been and is the Co-Director of the New York State Department of Health, Division of Home and Community Based Care.

16.     At all times hereinafter mentioned herein and at the present time, Defendant **MARYBETH FADER** has been and is the Director, ACF CON Certification Unit of the New York State Department of Health, Division of Home and Community Based Care.

17.     At all times hereinafter mentioned herein and at the present time, Defendant **ALAN J. LAWITZ, Esq.,** has been and is an Associate Attorney of the Bureau of House Counsel, New York State Department of Health.

18.     At all times hereinafter mentioned herein and at the present time, Defendant **KEVIN MAHON** has been and is the Commissioner of the New York State Department of Social Services.

19.     The Commissioner of DSS and the DSS divisions and units in turn act upon the authority of Social Services Law Article 2.

20.     The Commissioner of DOH and the DOH divisions and units in turn act upon the authority of Public Health Law Article 2.

21.     The regulation and licensing of residential care programs, including Adult Homes, are provided for by Article 7 of the New York Social Services Law.

22.    The above-named Defendants are sometimes referred to herein as the "State Defendants."

23.    Each of the State Defendants, acting under color of state law, are responsible for the actions and directives that are the subject of this action.

24.    Defendant **THE LONG HILL ALLIANCE COMPANY, INC.,** [sometimes referred to herein as "Long Hill"] is a corporation, organized and existing under the laws of the State of New York, with its principal place of business at 265 Post Avenue, Westbury, NY 11590.

**Plaintiff's Ownership**

25.    By deed dated and recorded on October 4, 2002, Plaintiffs Pondview Corp. and the Exchange Authority LLP, Trustee of the Almeida Parkfield Exchange Trust, took title as owners in fee simple of the real property known as 51 Mountainview Avenue, Nyack, New York 10960, which is located at Section 65-27, Block 1, Lot 1 on the Tax Map of the Village of Nyack, located in Rockland County, New York [the "Premises"].

26.    The Premises consists of a licensed 100 bed Private Proprietary Adult Home [the "Adult Home" or "Tappan Zee Manor"] as defined in Section 461-f the Social Services Law of New York.

27.    Plaintiff PONDVIEW has been since October 4, 2002 and remains at present the owner of a 73.50% interest in the Premises.

28.    EXCHANGE AUTHORITY LLP, Trustee of the Almeida Parkfield Exchange Trust was, and subsequently PARKFIELD became the owner of a 26.50% interest in the Premises.

29.    As assignee of all rights, title and interest of EXCHANGE AUTHORITY LLP, Trustee of the Almeida Parkfield Exchange Trust, PARKFIELD is at present the owner of a 26.50%

interest in the Premises.

30.     By reason of and according to the above described percentage interests, at present, Plaintiffs PONDVIEW and PARKFIELD are tenants in common of the Premises.

31.     TZ Manor is the proposed operator of the Adult Home on behalf of PONDVIEW and PARKFIELD.

32.     On September 9, 2002, TZ Manor, LLC expected to close on the purchase of the Adult Home on October 4, 2002 and applied to the DOH for a temporary operating license. This application was denied by the DOH on February 10, 2003 on the basis that site control of the Adult Home was in dispute because of an alternate claimant asserting leasehold rights in the Adult Home.

### The 1988 Lease

33.     Upon information and belief, Russand Inc. acquired title to the Premises on or about September 30, 1996.

34.     By a Lease dated June 18, 1998 ["Lease"], Russand, Inc., as Landlord, leased the Premises to Eleanor Blatt, as Tenant for a term of ten years.

35.     In accordance with the Lease, Tenant was obligated to pay Landlord a Fixed Net Rent each year, payable in equal monthly payments, and subject to a rent escalation provision.

36.     The Fixed Net Rent under the Lease was set as "an amount equal to the annual payment of: (i) principal and interest due the Lender in connection with the mortgage of $11,2287,700 on the Premises, subject to any change should the mortgage be reduced or instead at the time of the final endorsement (The anticipated monthly payment of principal and interest is $83,600.57); (ii) mortgage insurance payments, based upon 0.5% of the mortgage amount ($56,134.50 a month), such amount to be reduced each year based upon the outstanding principal

balance; (iii) the payments for the required reserve for replacement of property (the monthly amount is approximate $6,541.25); (iv) $100,000; and (v) any other payment that may be required by HUD that is not already required to be paid as additional ret under this lease."

37.    The Lease also provided that "The Net Fixed Rent shall be absolutely net to Landlord and all costs, expenses and obligations of every kind and nature relating to the [P]remises shall be paid by Tenant, except as otherwise expressly provided herein."[1]

38.    As the owner, transferee and assignee of the Premises, Plaintiffs have all right, title and interest to pursue and collect rent, use and occupancy fees and damages arising or flowing from said Lease from October 4, 2002 to date.

### Prior Operating Licenses

39.    On or about July 26, 1996, Eleanor Blatt filed an assumed business name certificate stating that she was doing business under the name "Tappan Zee Manor" at 51 Mountainview Avenue, Nyack, New York, the address of the Premises.

40.    On or about June 5, 1998, DOH issued an Operating Certificate to Eleanor Blatt to operate a Private Proprietary Adult Home known as Tappan Zee Manor.

41.    Russand, Inc. as Landlord, and Eleanor Blatt as Tenant, executed a lease dated July 22, 1996 providing for Eleanor Blatt to occupy the Premises for ten years for the purposes of operating an Adult Home.

42.    Upon information and belief, Eleanor Blatt submitted a copy of the above-described July 22, 1996 lease to DOH in support of her application for an Operating Certificate.

---

[1] The successors and assigns of the named tenant under the 1988 Lease, and the successors to the landlord (but not assigns, *i.e.* Plaintiffs herein) claim that there is a July 31, 2001 Addendum to the 1988 Lease which reduced the annual rent to $300,000. Plaintiffs allege that the Addendum is a backdated and invalid document.

43.    Upon information and belief, the above-described July 22, 1996 lease was replaced by the above-described Lease dated June 18, 1998, which was executed after Russand, Inc. took title to the Premises.

44.    Eleanor Blatt passed away on or about May 27, 2001.

45.    After Eleanor Blatt's passing, Andrew Blatt continued to operate the Adult Home personally until August 14, 2004, and due to his continued claim to occupancy, was responsible for the continued operation under the Court receivership through July 2, 2006.

46.    On July 26, 2001, Letters of Administration for the Estate of Eleanor Blatt were issued to Andrew Blatt by the Surrogates' Court of the County of Rockland, File No. 355.2001.

47.    Upon information and belief, Andrew Blatt, as the administrator of the Estate of Eleanor Blatt, assigned all of Eleanor Blatt's purported right, title and interest in the Lease and purported right, title and interest to possess, operate and administer the Adult Home to Andrew Blatt and /or Tappan Zee Senior Management Corp.

48.    Upon information and belief, Andrew Blatt, as the administrator of the Estate of Eleanor Blatt, assigned all of Eleanor Blatt's purported right, title and interest in Tappan Zee Manor to Andrew Blatt.

49.    Upon information and belief, on or about June 25, 2002, the DOH designated Andrew Blatt as the temporary operator to continue operating the Adult Home, which temporary license had been renewed from time to time until August 14, 2004.

50.    Upon information and belief, on or about June 25, 2002, the DOH designated Andrew Blatt as the temporary operator to continue operating Tappan Zee Manor, which temporary license has been renewed from time to time until August 14, 2004.

### The Receivership

51.    In an action entitled *Pondview Corp., et al. v. Russand, Inc., et al.*, brought in the Supreme Court of the State of New York, Westchester County, Index No. 0822/2003, the Supreme Court entered an Amended Order dated April 20, 2004 (the Honorable George M. Bergerman, J.S.C., presiding), amending a Decision and Order of said Court dated March 24, 2004.

52.    In the Amended Order dated April 20, 2004, the Supreme Court appointed Long Hill as Temporary Receiver and Interim Operator of the Adult Home known as "Tappan Zee Manor."

53.    On July 6, 2004, Marybeth Fader notified Long Hill that the DOH "authorizes the temporary operation of Tappan Zee Manor Adult Home by Long Hill Alliance Company ('Receiver') pursuant to its appointment by the Honorable George M. Bergerman, J.S.C...." and that "[s]uch authorization is granted under the provisions of Section 461-f of the Social Services Law and 18 NYCRR 485.9(b), and it is further granted pending review of any applications for an operating certificate that has been or will be submitted. This authorization is effective July 8, 2004..."

## AS FOR A FIRST CAUSE OF ACTION:
## THE FIRST 1983 CLAIM AGAINST THE STATE DEFENDANTS

54.    Plaintiffs repeat and reallege each and every allegation previously set forth herein as if fully and completely repeated herein.

55.    By an Order dated March 3, 2006 (the Honorable Joseph S. Alessandro, J.S.C., presiding), the Supreme Court terminated the aforementioned receivership of Long Hill Alliance Company.

56.    Long Hill subsequently terminated its possession, occupancy and operation under the authority of the Court directed receivership on July 2, 2006, and accordingly provided the Court with a closing statement for the period ending on July 2, 2006.

57.    Pursuant to the March 3, 2006 Court-ordered termination of the receivership,

9

Plaintiffs, through Robert Almeida, sought to take over the operation of Tappan Zee Manor. However, from that date and continuing to the present, Defendants refused to turn over the possession, occupancy or operation of the Adult Home to Plaintiffs.

58.    By its refusal to turn over the operation of Tappan Zee Manor to Plaintiffs, Defendants have deprived Plaintiffs its right to the use and enjoyment of its Adult Home.

59.    By letter dated October 2, 2006, Robert Almeida wrote to Robert P. Dougherty, Director of the DOH Division of Home and Community Based Care, requesting that: "With the conclusion of the Court Receivership as of July 2, 2006 there is now no issue of site control and TZ Manor, LLC is now solely responsible for the facilities, the personal property and the operating business. We therefore request that you promptly approve a temporary operating license for TZ Manor, LLC..."

60.    By letter dated October 11, 2006, from the DOH to Robert Almeida, the DOH responded to Robert Almeida's aforesaid letter, wherein the DOH rejected Mr. Almeida's request, and declared its position that Long Hill Alliance Company will continue to be the only lawful temporary operator of Tappan Zee Manor.

61.    By letter dated June 6, 2007, which was also emailed on June 7, 2007, Vincent Cuono, Esq., general counsel for the Plaintiffs (except for the Exchange Authority), through TZ Manor, LLC, the proposed operator of the facility for Plaintiffs, wrote to Alan L. Lawitz, Esq., at the DOH Division of Legal Affairs, Bureau of House Counsel, wherein Mr. Cuono "point[ed] out that the Long Hill Alliance Company, Inc.'s ('Long Hill') appointment as Receiver of Tappan Zee Manor (the 'Facility') by the Honorable George M. Bergerman, J.S.C. has been terminated as far back as July 2, 2006, and that they are no longer acting on behalf of the Court... [and] that they have

10

no current appointment or contract with the owners of the facility, other than a Consulting Agreement, which provisions do not take effect until the owners of the Facility are licensed by the DOH and they therefore have no right to any current fees or payments from us" [emphasis in the original].

62.    The referred to Consulting Agreement referred to TZ Manor's long-outstanding application with the DOH for a temporary operating license.

63.    Mr. Cuono continued: "The sole authority Long Hill claims to be acting under is the DOH temporary license. This license authorizes them to receive funds from the residents of the Facility and enjoins them from using those funds other than for the benefit of the residents. It does not authorize them to divert funds to pay their own fees..."

64.    Mr. Cuono there noted that contrary to their authority, Long Hill has been improperly paying itself and others fees from the funds from the residents of the Facility, and that: "We have questioned their authority to divert these funds and they have asserted their right to do so based on the authority purportedly delegated to them by the DOH. We have repeatedly requested an expeditious appointment of a temporary license pursuant to Section 485-5 of the Social Services Law, which has been denied to us. If the DOH had any legitimate reason to deny is the temporary license, they could have sought the appointment of a Receiver under Sections 461-f4 (a) of the Social Services Law, which of course, they have not done. By denying us a temporary license, the DOH has effectively enabled the actions of Long Hill to the detriment of both the residents as well as the owners who have, so far, been forced to avoid foreclosure, by covering the short falls caused by Long Hill's diversion of funds"

65.    By letter dated June 27, 2007, Alan J. Lawitz, Esq., writing as Associate Attorney of

11

the Bureau of House Counsel of the DOH, Defendant responded to Mr. Cuono's above-described letter and email.

66.    In the June 27, 2007 letter, Mr. Lawitz admitted that Long Hill's Court appointment had been terminated and that they were acting under the auspices of the DOH: "You correctly point out that the receivership of Long Hill Alliance Company, Inc. (Long Hill) was terminated by the court. Long Hill has been authorized to act as temporary operator pending approval of an application for change of operator.

67.    Mr. Lawitz also admitted that Long Hill's use of funds – actually their diversion – received from Tappan Zee's residents was under DOH auspices: "Long Hill cannot be expected to perform the function of a temporary operator without being paid. In the absence of other arrangements between the parties for payment of its services, the Department [DOH] has no objection to use of portion of operational revenue to pay for its services..."

68.    In a lame attempt to obscure the fact that the DOH had unlawfully extended and ensconced Long Hill's term as receiver, Mr. Lawitz also stated: "I have requested that the term 'receiver' no longer be applied to Long Hill's operation of Tappan Zee Manor."

69.    On July 17, 2007, Vincent Cuono sent an email to Alan Lawitz, Esq. asking: In the absence of either a court-appointed receiver or commissioner-appointed receiver, please explain the legal or statutory basis for the appointment of the Long Hill Alliance Company, Inc. ("Long Hill"), as the temporary operator of Tappan Zee Manor, after the court-ordered termination of the receivership on March 3, 2006... The owners have neither authorized nor approved any payments to Long Hill post-receivership and, in fact, have never been advised upon what basis these funds have been taken from the facility. It is our understanding that all funds seized by Long Hill, were pursuant

12

to DOH authorization. If this is not the case, please advise immediately so that we may commence legal action to receiver our funds. I would appreciate your response to this letter so that we can best determine what our legal rights and remedies are."

70.    Alan Lawitz responded to Mr. Cuono's email, by email dated July 24, 2007. In his email, Mr. Lawitz acknowledged that the DOH had "authorized" Long Hill to continue to act as interim operator of Tappan Zee Manor... [and] Long Hill had received the Department approval as interim operator as part of the process of Long Hill's appointment by the court as receiver":

71.    In its entirety, Mr. Lawitz wrote:

Dear Mr. Cuono:    This is in response to your email note dated July 17, 2007, a copy of which is attached. Following the termination of the court-appointed receivership of Long Hill Alliance Company, Inc., there was a clear need for the Department to authorize Long Hill to continue to act as interim operator of Tappan Zee Manor, as there was no other individual or entity that had received Department approval to operate the facility, and the Department did not wish to take action to require the closure of the facility and transfer of its residents. Long Hill had received the Department approval as an interim operator as part of the process of Long Hill's appointment by the court as receiver.

The Department has authority to issue operating certificates under Social Services Law (SSL) section 460-d for the operation of adult homes serving dependent residents, in furtherance of the Legislative intent set out in section 460 of the SSL. Under SSL section 461-c, the operator and the residents enter into admission agreements under which the operator agrees to provide the services required by law, in consideration of the resident's payment for such services. No individual or entity other than the approved operator is legally

13

authorized to participate in the operating revenue of an adult home. The authority to regulate adult homes was transferred from the former New York State Department of Social Services to the New York State Department of Health pursuant to Chapter 436 of the Laws of 1997, section 122(e).    In most cases, when the operator does not own the real property, the operator is making rental payments under a lease to the landlord. Because of the unique and litigious circumstances in this case, there is no current lease between the real property owner and the interim operator. You have advised that these circumstances have created difficulty for the real property owner, and we have heard this as well directly from your client. As you know, the Department is currently reviewing an application for change of operator of this adult home. I can speak as to the legal review of the application. The Department has provided comments this past June on the legal component of the application, and I am aware that your client has provided a response to these comments. We will try to continue to expedite this review.

Sincerely yours, Alan J. Lawitz Associate Attorney Bureau of House Counsel NYS Department of Health Phone: (518) 473-7076FAX: (518) 473-2019E-mail: ajl02@health.state.ny.us

72.    On October 3, 2007, the DOH approved Part I of TZ Manor, LLC's application to become the operator of the Adult Home known as Tappan Zee Manor.

73.    As of the date of this Complaint, Part II of TZ Manor, LLC's application is still pending DOH final approval.

74.    As of the date of this Claim, Long Hill is still operating the facility and collecting and retaining funds and fees under the auspices of the DOH's position, as set forth in the various

communications set forth above.

75.    Defendants' actions with respect to authorizing and effectively extending Long Hill's reign as receiver and operator of the Adult Home are in violation and circumvention of the State Supreme Court's Orders set forth above.

76.    Upon the issuance of the above-referenced State Supreme Court Order dated March 3, 2006, Defendants were duty-bound and obliged to honor the fact that Long Hill's receivership and authority to continue operating the Adult Home, including its authority to receive and collect operating revenue, disburse funds and collect fees, had terminated.

77.    In fact, the only entity with site control of the Adult Home at that time was TZ Manor, LLC, as Long Hill did not have any right or claim of an ownership, leasehold or other possessory interest or other rights. Notwithstanding the State Defendants' claim of the importance of site control, the State Defendants intentionally and knowingly disregarded the fact that site control was no longer at issue, and by administrative fiat, gave possession, occupation and control over the Adult Home and its revenue and profits to Long Hill, in violation of Plaintiff's unquestionable property interests and civil rights.

78.    At the most, pursuant to Section 461-f (1) of the Social Services Law, the DOH arguably had the option to extend Long Hill's tenure for two successive 60-day periods, totaling 120 days.

79.    As the owner, transferee and assignee of the Premises, Plaintiffs have all right, title and interest to pursue and collect rent, use and occupancy and damages arising or flowing from said Lease from March 3, 2006 to date

80.    The State Defendants had no lawful authority or reason to extend Long Hill's tenure,

and if there were any such reasons and lawful basis, the State Defendants had the obligation to seek court approval for the appointment (or extension of the term of) a receiver, and in such event, would have been obliged to pay rent to the Plaintiffs based on Section 461(f) (4) (b) of the Social Services Law.

81.     During the time period at issue, namely March 3, 2006 to date, due to the State Defendants' actions and directions, Long Hill has unlawfully been in continuous possession of and continually operating the Adult Home.

82.     For the time period from March 3, 2006 to date, the amount of rent due was $154,618.65 monthly, plus real estate taxes, on a 'triple-net' basis of which no monies have been received, leaving a balance due for that period through February 28, 2008 of $4,125,152.19 consisting of rent in the amount of $3,710,847.60 and real estate taxes in the amount of $414,304.59.

83.     By reason of the foregoing, Plaintiffs respectfully demand a judgment against the State Defendants for $4,125,152.19, with interest calculated from the respective due date of each month's payment.

**AS FOR A SECOND CAUSE OF ACTION:**
**THE SECOND 1983 CLAIM AGAINST THE STATE DEFENDANTS**

84.     Plaintiffs repeat and reallege each and every allegation previously set forth herein as if fully and completely repeated herein.

85.     Defendants' actions with respect to authorizing and effectively extending Long Hill's reign as receiver and operator of the Adult Home are in violation and circumvention of the letter and spirit of the governing State statutes and regulations.

86.     By reason of the foregoing, Plaintiffs respectfully demand a judgment against the State Defendants for $4,125,152.19, with interest calculated from the respective due date of each

month's payment.

## AS FOR A THIRD CAUSE OF ACTION:
### THE THIRD 1983 CLAIM AGAINST THE STATE DEFENDANTS

87.    Plaintiffs repeat and reallege each and every allegation previously set forth herein as if fully and completely repeated herein.

88.    Alternatively, the letter, and/or Defendants' interpretation of the governing statutes and regulations under which Defendants' purportedly derived their authority and upon which they purportedly based their actions and directives, including authorizing and effectively extending Long Hill's reign as receiver and temporary operator of the Adult Home, are in violation of the constitutional protections against unlawful deprivations of property.

89.    By reason of the foregoing, Plaintiffs respectfully demand a judgment against the State Defendants for $4,125,152.19, with interest calculated from the respective due date of each month's payment.

## AS FOR A FOURTH CAUSE OF ACTION:
### THE FOURTH 1983 CLAIM AGAINST THE STATE DEFENDANTS

90.    Plaintiffs repeat and reallege each and every allegation previously set forth herein as if fully and completely repeated herein.

91.    Defendants' directives which facilitated and allowed Long Hill to retain and pay itself and others fees from revenue derived from the residents of the Adult Home was an unlawful taking of property, and was made without any lawful authority.

92.    By reason of the foregoing, Plaintiffs respectfully demand a judgment against the State Defendants for $4,125,152.19, with interest.

## AS FOR A FIFTH CAUSE OF ACTION:
### THE FIFTH 1983 CLAIM AGAINST THE STATE DEFENDANTS

17

93.     Plaintiffs repeat and reallege each and every allegation previously set forth herein as if fully and completely repeated herein.

94.     On September 23, 2002 the Plaintiffs first submitted an application for the temporary licensure of the Adult Home.

95.     The Defendants rejected Plaintiff's initial application for a temporary operator's license on February 10, 2003, on the basis that there was an issue of "site control" since Andrew Blatt was also claiming control of Tappan Zee Manor, through a leasehold interest.

96.     Subsequently, on November 22, 2006, after the issue of site control had been clarified by the Court and Andrew Blatt's claim was rejected, the Plaintiff T Z Manor, LLC again submitted an application for a *temporary* operator's license for the Adult Home, confirming that there was no longer an issue of site control.

97.     However, on March 12, 2007, Defendant Marybeth Fader, advised T Z Manor, LLC and Robert B. Almeida that notwithstanding its prior advice (see letter of October 11, 2006 where the DOH advised that the application for temporary operator status should be submitted), that the DOH will not entertain an application for a *temporary* operator's license for the Adult Home, and that Plaintiffs will need to begin to submit an application for a *permanent* operators license. The DOH took this position even though they concurrently were authorizing Long Hill's operating license on a temporary basis, and that they had earlier authorized Andrew Blatt's operating license from June 25, 2002 to August 14, 2004 on a temporary basis.

98.     On March 22, 2007, Plaintiff TZ Manor, LLC submitted an application for a *permanent* operator's license for the Adult Home.

99.     As of the date of this complaint, although fully qualified, and the fact that Part I of

18

Plaintiff TZ Manor, LLC's application, which includes the approval of character and competence, has been finally approved – fourteen months after the second application for temporary license was submitted – Plaintiff's application has yet to be fully processed and approved.

100.     Defendants' actions and delay have been unreasonable, especially in the context of the deprivation and their authorizing and effectively extending Long Hill's reign as receiver and operator of the Adult Home.

101.     By reason of the foregoing, Plaintiffs respectfully demand a judgment against the State Defendants for $4,125,152.19, with interest.

## AS FOR A SIXTH CAUSE OF ACTION:
## TORTUOUS INTERFERENCE AGAINST THE STATE DEFENDANTS

102.     Plaintiffs repeat and reallege each and every allegation previously set forth herein as if fully and completely repeated herein.

103.     Defendants' actions tortuously interfered with Plaintiff's contractual rights, implied and express, to collect revenues and profits from the Adult Home's residents.

104.     By reason of the foregoing, Plaintiffs respectfully demand a judgment against the State Defendants for $4,125,152.19, with interest.

## AS FOR A SEVENTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS

105.     Plaintiff repeats and realleges each and every allegation previously set forth herein as if fully and completely repeated herein.

106.     The State Defendants, by authorizing and effectively extending Long Hill's reign as receiver and operator of the Adult Home, and Long Hill, by its operation and occupancy of the Adult Home, are liable for rent, taxes and use and occupancy, for the period of that operation and occupancy from March 3, 2006 to date, in the amount of $$4,125,152.19.

19

107.    By reason of the foregoing, Plaintiffs respectfully demand a judgment against Defendants, jointly and severally, for $4,125,152.19, with interest calculated from the respective due date of each month's payment, and use and occupancy.

## AS FOR A EIGHTH CAUSE OF ACTION – AGAINST ALL DEFENDANTS

108.    Plaintiff repeats and realleges each and every allegation previously set forth herein as if fully and completely repeated herein.

109.    The State Defendants, by authorizing and effectively extending Long Hill's reign as receiver and operator of the Adult Home, and Long Hill, by its operation and occupancy of the Adult Home, have been unjustly enriched at Plaintiffs' expenses.

110.    By reason of the foregoing, Plaintiffs respectfully demand a judgment against Defendants, jointly and severally, for $4,125,152.19, with interest.

111.    In addition, Long Hill has removed from the facility an amount in excess of $300,590.24 from March 3, 2006 to December 31, 2007.  The Plaintiff respectfully demands a judgment against Long Hill for additional amounts from January 1, 2008 with interest therefrom.

**WHEREFORE**, Plaintiff demands judgment as follows:

a.    **On the First Cause of Action** against the State Defendants for $4,125,152.19, with interest calculated from the respective due date of each month's payment;

b.    **On the Second Cause of Action** against the State Defendants for $4,125,152.19, with interest calculated from the respective due date of each month's payment;

c.    **On the Third Cause of Action** against the State Defendants for $4,125,152.19, with interest calculated from the respective due date of each month's payment;

d.    **On the Fourth Cause of Action** against the State Defendants for $4,125,152.19,

with interest;

e.  **On the Fifth Cause of Action** against the State Defendants for $4,125,152.19, with interest;

f.  **On the Sixth Cause of Action** against the State Defendants for $4,125,152.19, with interest;

g.  **On the Seventh Cause of Action** against Defendants, jointly and severally, for $4,125,152.19, with interest calculated from the respective due date of each month's payment, and use and occupancy;

h.  **On the Eight Cause of Action** against Defendants, jointly and severally, for $4,125,152.19, with interest; and in addition for $300,590.24, with interest against Long Hill;

i.  Awarding Plaintiffs their legal fees, costs and disbursements of this action;

j.  For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff's demand a trial by jury.

Dated: April 1, 2008

Yours, etc.

**LAW OFFICES OF SANFORD F. YOUNG, P.C.**
Attorneys for Plaintiffs

By:_____
Sanford F. Young, Esq. (7877)
225 Broadway – Suite 2008
New York, New York 10007
(212) 227-9755

21