UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TZ MANOR, LLC, PONDVIEW CORP., and
PARKFIELD PROPERTIES,

                                Plaintiffs,

      -v-

RICHARD F. DAINES, M.D., Commissioner of the
New York State Department of Health, ROBERT P.
DOUGHERTY, Director of the New York State
Department of Health, Division of Home and
Community Based Care, JUDITH R. MOONEY, Co-
Director of the New York State Department of Health,
Division of Home and Community Based Care,
MARYBETH FADER, Director, ACF CON
Certification Unit of the New York State Department
of Health, Division of Home and Community Based
Care, KEVIN MAHON, Commissioner of the New
York State Department of Social Services, ALAN J.
LAWITZ, ESQ., Associate Attorney, Bureau of House
Counsel, New York State Department of Health, and
THE LONG HILL ALLIANCE COMPANY, INC.,

                                Defendants.

---

Case No. 08-CV-3293 (KMK)

OPINION AND ORDER

Appearances:

Sanford F. Young, Esq.
New York, NY
*Counsel for Plaintiffs*

Scott J. Spiegelman, Esq.
Office of the Attorney General of the State of New York
New York, NY
*Counsel for State Defendants*

James A. Shannon, Esq.
O'Connell & Aronowitz, Attorneys at Law
Albany, NY
*Counsel for Defendant Long Hill Alliance Company, Inc.*

KENNETH M. KARAS, District Judge:

Plaintiffs TZ Manor, LLC ("TZ Manor"), Pondview Corp. ("Pondview"), and Parkfield Properties ("Parkfield") (collectively, "Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983 ("Section 1983") and state law.  Plaintiffs allege, inter alia, that various New York state officials (the "State Defendants") effected a taking of Plaintiffs' property without just compensation and deprived Plaintiffs of due process of law, in violation of the Fifth and Fourteenth Amendments, by taking a variety of actions in connection with the operation of an Adult Home in Nyack, New York, by Defendant Long Hill Alliance Company, Inc. ("Long Hill").  The State Defendants move to dismiss all claims against them, asserting, inter alia, that Plaintiffs' Fifth Amendment takings claim must be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative, for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6); and that Plaintiff's Fourteenth Amendment due process claim must be dismissed for failure to state a claim.  For the reasons stated herein, the State Defendants' motion is granted, the Section 1983 claims are dismissed, supplemental jurisdiction over remaining state law claims is declined, and the Complaint is dismissed in its entirety without prejudice.

## I.  Background

For purposes of this Motion, the Court accepts as true all facts alleged by Plaintiffs in their Complaint.

At issue in this case is real property located at 51 Mountainview Avenue, Nyack, New York (the "Premises"), which contains a 100-bed adult home (the "Adult Home"), a licensed "adult care facility" as defined by N.Y. Soc. Serv. Law § 461 *et seq.*  (Compl. ¶¶ 25-26.) Eleanor Blatt signed a ten-year lease of the Premises in 1996, and in June 1998 she received

from the New York State Department of Health ("DOH") an Operating Certificate to operate the Adult Home; she subsequently replaced that lease with a new ten-year lease signed in June 1998. (*Id.* ¶¶ 34, 40-41, 43.)  After Eleanor Blatt's death in 2001, her interest in the Premises passed to her estate's administrator, Andrew Blatt, who continued to operate the Adult Home.[1]  (*Id.* ¶¶ 44-45, 47-48.)  On or about June 25, 2002, DOH designated Andrew Blatt as the "temporary operator" of the Adult Home, and DOH renewed his "temporary license" until August 14, 2004. (*Id.* ¶ 49.)

On September 9, 2002, TZ Manor applied to DOH for a "temporary operating license" to operate the Adult Home.  (*Id.* ¶ 32.)  On October 4, 2002, Pondview and the Exchange Authority LLP took title as owners of the Premises.  (*Id.* ¶ 25.)  Parkfield was subsequently assigned Exchange Authority LLP's interest in the Premises, making Pondview and Parkfield tenants in common.  (*Id.* ¶¶ 29-30.)  On February 10, 2003, DOH denied TZ Manor's application for a temporary operating license "on the basis that site control of the Adult Home was in dispute because of an alternate claimant asserting leasehold rights in the Adult Home."  (*Id.* ¶ 32.)

By order dated April 20, 2004, the Supreme Court of New York, Westchester County, "appointed Long Hill as Temporary Receiver and Interim Operator of the Adult Home."  (*Id.* ¶ 52.)[2]  On July 6, 2004, Defendant Marybeth Fader, a DOH official, notified Long Hill that, effective July 8, 2004, DOH "'authorize[d] the temporary operation'" of the Adult Home by

---

[1] Though the Complaint is silent on the issue, Plaintiffs indicate in their papers that Andrew Blatt is the son of Eleanor Blatt.  (Pls.' Mem. in Opp'n to Mot. to Dismiss ("Pls.' Mem.") 3.)

[2] According to Plaintiffs, among the issues raised in the state court litigation was whether Plaintiffs had "site control" or whether Andrew Blatt had "the exclusive right to possess and operate the premises under the ten-year 1998 lease."  (Pls.' Mem. 6.)

Long Hill, "'pursuant to its appointment'" by the Supreme Court, "'pending review of any applications for an operating certificate that has been or will be submitted.'"  (*Id.* ¶ 53 (quoting Fader).)

By order dated March 3, 2006, the Supreme Court terminated Long Hill's receivership of the Adult Home, effective July 2, 2006, resolving the underlying issue of site control.  (*Id.* ¶¶ 55-56, 59.)  Plaintiffs, represented by Robert Almeida, subsequently "sought to take over the operation" of the Adult Home.  (*Id.* ¶ 57.)  By letter of October 2, 2006, Almeida stated Plaintiffs' view that "'as of July 2, 2006 there is now no issue of site control,'" and requested that DOH "'promptly approve a temporary operating license for TZ Manor.'"  (*Id.* ¶ 59 (quoting letter).)  By letter of October 11, 2006, DOH rejected Plaintiffs' request and "declared its position that Long Hill . . . w[ould] continue to be the lawful temporary operator" of the Adult Home.  (*Id.* ¶ 60.)

By letter of June 6, 2007, Plaintiffs' general counsel Vincent Cuono stated that Long Hill was "'no longer acting on behalf of the Court'" and had "'*no current appointment or contract* with the owners of the facility'" and "'therefore ha[d] no right to any current fees or payments from us.'"  (*Id.* ¶ 61 (quoting letter).)  Cuono's letter stated that "contrary to [Long Hill's] authority" under "'the DOH temporary license,'" "Long Hill has been improperly paying itself and others fees from the funds from the residents of the [Adult Home]."  (*Id.* ¶¶ 63-64 (quoting letter).)  The letter stated:

> "We have questioned their authority to divert these funds and they have asserted their right to do so based on the authority purportedly delegated to them by the DOH.  We have repeatedly requested an expeditious appointment of a temporary license pursuant to Section 485-5 of the Social Services Law, which has been denied to us.  If the DOH had any legitimate reason to deny [u]s the temporary license, they could have sought the appointment of a Receiver under Sections

4

> 461-f4(a) [sic] of the Social Services Law, which of course, they have not done.
> By denying us a temporary license, the DOH has effectively enabled the actions
> of Long Hill to the detriment of both the residents as well as the owners . . . ."

(*Id.* ¶ 64 (quoting letter).)  By letter of June 27, 2007, Defendant Alan J. Lawitz, a DOH

attorney, responded that "'Long Hill has been authorized to act as temporary operator pending

approval of an application for change of operator,'" and that "'[i]n the absence of other

arrangements between the parties for payment of [Long Hill's] services, . . . [DOH] has no

objection to use of [a] portion of operational revenue to pay for its services.'"  (*Id.* ¶¶ 66-67

(quoting letter).)

By email of July 17, 2007, Cuono asked Lawitz to "explain the legal or statutory basis for

the appointment of [Long Hill] as the temporary operator of [the Adult Home]," stating that

"'[t]he owners have neither authorized nor approved any payments to Long Hill post-

receivership'" and that "'[i]t is our understanding that all funds seized by Long Hill[] were

pursuant to DOH authorization.'"  (*Id.* ¶ 69 (quoting email).)  By email of July 24, 2007, Lawitz

responded:

> Following the termination of the court-appointed receivership of Long Hill . . . ,
> there was a clear need for [DOH] to authorize Long Hill to continue to act as
> interim operator of [the Adult Home], as there was no other individual or entity
> that had received [DOH] approval to operate the facility, and [DOH] did not wish
> to take action to require the closure of the [Adult Home] and transfer of its
> residents. . . .
>
> [DOH] has authority to issue operating certificates under Social Services
> Law (SSL) section 460-d . . . .  No individual or entity other than the approved
> operator is legally authorized to participate in the operating revenue of an adult
> home. . . . In most cases, when the operator does not own the real property, the
> operator is making rental payments under a lease to the landlord.  Because of the
> . . . circumstances in this case, there is no current lease between the real property
> owner and the interim operator. . . . As you know, [DOH] is currently reviewing
> an application for change of operator of [the Adult Home]. . . . We will try to
> continue to expedite this review.

(*Id.* ¶ 71.)

On October 3, 2007, DOH approved Part I of TZ Manor's application to become the operator of the Adult Home.  (*Id.* ¶ 72.)  Part II of the application remained pending when Plaintiffs filed suit in this Court on April 4, 2008.  (*Id.* ¶ 73.)  Plaintiffs named as defendants Long Hill, Fader, Lawitz, the Commissioner of DOH, the Commissioner of the New York State Department of Social Services, and two other DOH officials.

On May 13, 2008, DOH issued TZ Manor an "operating certificate," and TZ Manor began "operating the [Adult Home] on behalf of Plaintiffs."  (Aff. of Robert Almeida in Opp'n to Mot. to Dismiss ¶ 7.)

The State Defendants filed this motion to dismiss on December 16, 2008, and the Court held oral argument on July 10, 2009.

## II.  Discussion

### A.  Standards of Review

#### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint."  *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)).  "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Id.* (internal citations and quotation marks omitted).  "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the

district court may examine evidence outside of the pleadings to make this determination." *Id.* (internal citations and quotation marks omitted). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citations and quotation marks omitted) (alteration in original).

### 2. Rule 12(b)(6)

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted) (second alteration in *Twombly*).

Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. If Plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (internal citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original)).

> B. Fifth Amendment Takings Claim

The Complaint makes reference to the Fifth Amendment and states that Plaintiffs' lawsuit seeks "to recover for the unlawful taking . . . by Defendants." (Compl. ¶ 1.) Plaintiffs allege, in their "Fourth [Section] 1983 Claim Against the State Defendants," that "Defendants' directives which facilitated and allowed Long Hill to retain and pay itself and others fees from revenue derived from the residents of the Adult Home was [sic] an unlawful taking of property, and was [sic] made without any lawful authority." (*Id.* ¶ 91.) The Court construes these allegations as an attempt to state a claim under the Takings Clause of the Fifth Amendment.

The State Defendants contend that the Plaintiffs' takings claim should be dismissed as unripe. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") 8-10.) The Court is

"obliged to consider the ripeness question before reaching the merits of [Plaintiffs'] claims because ripeness is jurisdictional, and absent jurisdiction federal courts do not have the power to dismiss *with prejudice*." *Vandor, Inc. v. Militello*, 301 F.3d 37, 38-39 (2d Cir. 2002) (internal citations and quotation marks omitted).

"The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). In "consider[ing] whether the application of zoning laws amounted to a Fifth Amendment taking," the *Williamson* Court held that ripeness involved the analysis of "two independent" requirements. *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005). "'[P]rong-one ripeness'" is a "finality requirement," which mandates that a property owner seeking to challenge zoning regulations as a taking must first "obtain a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations." *Id.* at 348-49. "Under the second prong . . . a property owner must seek compensation for an alleged taking before proceeding to federal court." *Id.* at 349. "Before a federal takings claim can be asserted, compensation must first be sought from the state if it has a reasonable, certain and adequate provision for obtaining compensation." *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 109 (2d Cir. 2009) (internal quotation marks omitted); *see also Williamson*, 473 U.S. at 195 ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."). "A plaintiff must pursue 'relief under a state compensation procedure . . . even where it remains unsure and undeveloped.'" *Island Park*, 559 F.3d at 109 (quoting *Villager Pond, Inc. v. Town of Darien*, 56

F.3d 375, 380 (2d Cir. 1995)).

It is conceded that Plaintiffs are not barred by the first prong of the *Williamson* ripeness test. However, the State Defendants contend that Plaintiffs' takings claim is unripe under the second prong; they note that Plaintiffs failed to avail themselves of State remedies, and assert that adequate procedure was available to Plaintiffs because they could have filed an action under Article 1, Section 7 of the New York State Constitution, or brought an Article 78 proceeding. (Defs.' Mem. 8-9.) Indeed, this is the law within the Second Circuit. *See Vandor*, 301 F.3d at 39 (holding plaintiff's takings claim unripe because plaintiff failed to bring Article 78 proceeding, noting that "under New York State law, Article 78 is a form of proceeding available to compel public officials to comply with their responsibilities" and is "constitutionally sufficient"); *McCulloch v. Town of Milan*, No. 07-CV-9780, 2008 WL 2986257, at *3 (S.D.N.Y. July 17, 2008) (same); *Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 156 (E.D.N.Y. 2006) ("It is well-settled that New York State has a 'reasonable, certain and adequate provision for obtaining compensation.' The New York State Constitution states that 'private property shall not be taken for public use without just compensation.' N.Y. Const., art. I, § 7(a)." (internal citations omitted)); *R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 449 (S.D.N.Y. 2003) (same); *RKO Delaware, Inc. v. City of New York*, No. 00-CV-2592, 2001 WL 1329060, at *5 (E.D.N.Y. Aug. 30, 2001) (same); *Vaizburd v. United States*, 90 F. Supp. 2d 210, 216-17 (E.D.N.Y. 2000) (same).

Plaintiffs acknowledge that they did not seek compensation through a State procedure, but contend that their failure to do so does not deprive this Court of jurisdiction because "the pursuit of a state remedy would have been futile." (Pls.' Mem. 19.) Plaintiffs are mistaken, as

the supposed futility of initiating a State proceeding provides an exception only to *Williamson*'s prong-one "final decision" requirement, and not to the prong-two "exhaustion" requirement at issue here. *See Vic's Super Serv., Inc. v. City of Derby*, No. 04-CV-2146, 2006 WL 2474918, at *7 (D. Conn. Aug. 25, 2006) ("[P]laintiffs' futility argument is inapplicable to the exhaustion prong of *Williamson*, because the futility exception applies only to *Williamson*'s final decision requirement."); *cf. Vandor*, 301 F.3d at 39 (holding that takings claim was unripe in spite of expiration of the statute of limitations for bringing an Article 78 proceeding).[3]

Alternatively, Plaintiffs argue that *Williamson* is satisfied and their federal takings claim is ripe because they "*have no remedy under State Law*." (Pls.' Mem. 20.) In particular, Plaintiffs contend (1) that *Birnbaum v. State*, 541 N.E.2d 23 (N.Y. 1989), forecloses Plaintiffs' recovery under state law; (2) that Article 1, Section 7 of the New York State Constitution does not provide Plaintiff any remedies; and (3) that Plaintiffs could not recover money damages in an Article 78 proceeding. (Pls.' Mem. 20-23.) Each of these arguments is unavailing.

---

[3] Plaintiffs also argue that they were not required to seek compensation through State procedures because the *Williamson* ripeness doctrine "applies only to land use cases." (Pls.' Sur-Reply Mem. of Law in Opp'n to Mot. to Dismiss 2.) Plaintiffs cite no authority for this proposition in their papers, and Plaintiffs' counsel could not provide any when asked by the Court at oral argument. The proposition is plainly false. The *Williamson* requirement that a plaintiff seek compensation through available state procedures has never been limited to cases involving land use regulations; rather, it "applies to physical as well as regulatory takings." *RKO Delaware, Inc.*, 2001 WL 1329060, at *4 (citing *Villager Pond*, 56 F.3d at 380 ("*Williamson* drew no distinction between physical and regulatory takings, and the rationale of that case, that 'a property owner has not suffered a violation of the Just Compensation Clause until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State,' demonstrates that any such distinction would be unjustified." (internal citation omitted))). Indeed, *Williamson* applies to takings claims that have nothing at all to do with real property. *See, e.g.*, *Ford Motor Credit Co. v. N.Y. City Police Dep't*, 394 F. Supp. 2d 600, 619 (S.D.N.Y. 2005) (applying *Williamson* ripeness requirement to alleged taking arising from city procedures for retaining and disposing of seized vehicles), *aff'd*, 503 F.3d 186 (2d Cir. 2007).

First, in *Birnbaum*, the New York Court of Appeals held that the State was entitled to summary judgment on plaintiff's claim that the State's actions in "preventing the precipitous closing of a nursing home in contravention of the regulations of the Department of Health . . . constitute[d] a 'taking' of property under the Federal or State Constitutions." *Birnbaum*, 541 N.E.2d at 24.  Plaintiffs claim that *Birnbaum* demonstrates that Plaintiffs here could not recover in an action under Article I, Section 7 of the New York State Constitution.  (Pls.' Mem. 20.) Plaintiffs provide no reasoning in support of this view, and instead contradict their conclusion by asserting that *Birnbaum* "discusses a number of factors that *distinguish* it from the instant case." (*Id.* 20 n.4 (emphasis added).)  Even assuming *arguendo* that *Birnbaum* were directly on point such that Plaintiffs' Article I, Section 7 claim would fail as a matter of law, this does not mean that the New York State Constitution lacks "a reasonable, certain and adequate provision for obtaining compensation" within the meaning of *Williamson*.  Rather, the law only requires that "a remedy *potentially* is available under the state constitution's provision," *Villager Pond*, 56 F.3d at 380 (emphasis added), not that Plaintiffs' case under state law would survive summary judgment in state court.[4]  Indeed, as noted above, even impossibility of success under the State provision does not make a federal action ripe.  *See Vandor*, 301 F.3d at 39.

Second, Plaintiffs assert that Article I, Section 7 of the New York State Constitution provides a procedure for compensation only in "two specific situations":  (1) the opening of private roads and (2) the use of private property for the drainage of swamp or farm lands.  (Pls.'

---

[4] If the law were as Plaintiffs suggest, a plaintiff alleging a Takings Clause violation in federal court could *always* avoid Rule 12(b)(1) dismissal on ripeness grounds merely by alleging that he or she would be unsuccessful in trying to obtain compensation through applicable State procedures.  Thus, plaintiffs with meritorious cases would have to follow State procedures, while cases lacking any merit would automatically be ripe for federal adjudication.

Mem. 20-21.)  Therefore, Plaintiffs argue, "[t]here is no provision made for the DOH's taking

that is the subject of the instant action."  (*Id.* 21.)  Plaintiffs offer no authority for this view, and

Article I, Section 7 has never been understood to be limited in this fashion.  *See Country View*

*Estates*, 452 F. Supp. 2d at 156 (holding Article I, Section 7 to be a reasonable, certain and

adequate provision for obtaining compensation for taking allegedly effected by inaction on

request for zoning variance allowing for construction of housing development); *R-Goshen LLC*,

289 F. Supp. 2d at 449 (same, for taking allegedly effected by conditional approval of plan for

building of drug store); *RKO Delaware*, 2001 WL 1329060, at *5 (same, for taking allegedly

effected by denial of permits for renovation); *Vaizburd*, 90 F. Supp. 2d at 216-17 (same, for

taking allegedly effected by negligent design and implementation of a storm damage reduction

and shoreline protection project).

Third, Plaintiffs claim that they could not receive just compensation in an Article 78

proceeding, because "an Article 78 proceeding only lies where a party seeks . . . to compel

public officials to comply with their responsibilities."  (Pls.' Mem. 21 (internal quotation marks

omitted).)  Plaintiffs cite *Anderson v. Perales*, No. 91-CV-1294, 2006 WL 1555605 (N.D.N.Y.

June 6, 2006), for the proposition that damages for civil rights violations cannot be awarded in

Article 78 proceedings, and that therefore an Article 78 proceeding would be an inadequate

vehicle through which to seek money damages.  (Pls.' Mem. 22-23.)  However, *Anderson* was

not a takings case, but a Section 1983 action alleging First Amendment and due process

violations; the plaintiff had brought an Article 78 proceeding seeking review of a decision to

suspend his license to operate an adult care facility.  The *Anderson* court held only that because

the monetary relief the plaintiff sought (damages for federal constitutional violations) was not

incidental to the primary relief sought under Article 78 (reinstatement of his license), he could not have received that monetary relief in the Article 78 proceeding. *See Anderson*, 2006 WL 1555605, at *5. In an Article 78 proceeding to remedy an alleged taking under New York law, however, just compensation would obviously be the primary relief sought, and that type of relief is often sought in such proceedings. *See, e.g.*, *Ward v. Bennett*, 592 N.E.2d 787, 789 (N.Y. 1992) (Article 78 proceeding "request[ing] a hearing to determine damages resulting from the alleged unlawful taking of their property without just compensation"); *Huntington Hills Assocs. v. Town of Huntington*, 852 N.Y.S.2d 786, 787 (App. Div. 2008) (Article 78 proceeding "to recover damages for a taking of real property without just compensation"); *Kent Acres Dev. Co. v. City of New York*, 841 N.Y.S.2d 108, 110 (App. Div. 2007) (same).[5]

Accordingly, Plaintiffs' takings claim is unripe for adjudication. As this Court thus lacks subject matter jurisdiction to consider it on the merits, the claim is dismissed without prejudice.

### C.  Fourteenth Amendment Due Process Claim

The Complaint makes reference to the Fourteenth Amendment and states that Plaintiffs' lawsuit seeks "to recover for the . . . deprivation of property by Defendants." (Compl. ¶ 1.) Plaintiffs allege, in their "First [Section] 1983 Claim Against the State Defendants," that "the State Defendants . . . gave possession, occupation and control over the Adult Home and its revenue and profits to Long Hill, in violation of Plaintiff's [sic] unquestionable property rights." (*Id.* ¶ 77.) In their "Third [Section] 1983 Claim Against the State Defendants," Plaintiffs allege that "the letter" (ostensibly the letter from Lawitz dated June 27, 2007) "and/or Defendants'

---

[5] It also bears noting that Plaintiff could have brought an Article 78 proceeding to force the State Defendants to grant TZ Manor its sought-after operating license. After all, the main theme of Plaintiffs' claim here is that the State Defendants acted ultra vires in keeping Long Hill in place and in letting Long Hill pay itself without honoring its lease obligations to Plaintiffs.

interpretation of the governing statutes and regulations under which Defendants[] purportedly derived their authority and upon which they purportedly based their actions and directives, including authorizing and effectively extending Long Hill's reign as receiver and temporary operator of the Adult Home, are in violation of the constitutional protections against unlawful deprivations of property." (*Id.* ¶ 88.)  In their "Fifth [Section] 1983 Claim Against the State Defendants," Plaintiffs allege that "Defendants' actions and delay have been unreasonable, especially in the context of the deprivation and their authorizing and effectively extending Long Hill's reign as receiver and operator of the Adult Home." (*Id.* ¶ 100.)  The Court construes these allegations, taken together, as an attempt to state a claim that the State Defendants deprived Plaintiffs of property without due process of law, in violation of the Fourteenth Amendment.

The State Defendants contend that Plaintiffs fail to state a claim for a due process violation because they have not alleged a cognizable property interest in an operating certificate, and in the alternative, because they failed to take advantage of State procedures to challenge DOH's denial of, or delay in issuing, an operating certificate to TZ Manor.  (Defs.' Mem. 14-15.)

"In order to sustain an action for deprivation of property without due process of law, a plaintiff must first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Town of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (internal quotation marks and emphasis omitted).  "Identifying the relevant property interest is . . . a two-step process." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005). "First, [the court] must determine whether some source of law other than the Constitution, such

as a state or federal statute, confers a property right on the plaintiff." *Id.* "Once such a property right is found, [the court] must determine whether that property right constitutes a property interest for purposes of the Fourteenth Amendment." *Id.* (internal quotation marks omitted).

"[I]n order to establish a federally protectable property interest in a state or local permit for which a plaintiff has applied, the plaintiff must show that, at the time the permit was denied, there was no uncertainty regarding his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 n.1 (2d Cir. 1999).

Under New York law, "[a]pproval to operate an adult care facility shall be granted only to an operator who satisfactorily demonstrates and documents . . . good moral character and standing in the community; . . . competence to effectively operate the proposed program; . . . a facility and program of operation which is in compliance with applicable law and regulations; and . . . sufficient financial resources to successfully establish and operate the proposed program." 18 N.Y.C.R.R. § 485.6(a)(1); *cf. DeStefano v. Emergency Hous. Group, Inc.*, 722 N.Y.S.2d 35, 37 (App. Div. 2001) (noting that adult homes are heavily regulated by the State).

Neither Plaintiffs' Complaint nor their papers explain what property right they believe they were denied without due process of law.  In response to the State Defendants' observation that the statutory criteria for receiving an operating certificate for an adult care facility in New York plainly contemplate DOH's exercise of discretion and therefore negate any claim based on a property interest in a certificate (Defs.' Mem. 14), Plaintiffs assert that "this case is not about the State's criteria or delays in issuing Plaintiffs an operator's license" (Pls.' Mem. 1).  Plaintiffs elaborate:  "Plaintiffs' complaint herein is not that the State Defendants withheld some benefit.

16

Plaintiffs' complaint is that the Defendants unlawfully took Plaintiffs' property and handed it over to Long Hill, including their ongoing revenues." (*Id.* 12.) However, the Complaint does not allege that the State Defendants actually took possession of any of Plaintiffs' property, or that they ever gave Long Hill anything other than an operating certificate.[6] Thus, it is entirely unclear what property interest the State Defendants are alleged to have taken from Plaintiffs.[7] For instance, there is no allegation that the State Defendants denied Plaintiffs the right to exclude Long Hill from the Premises, or the right to sue Long Hill for rent or fees, or any other right (aside from the right to have TZ Manor operate the Adult Home).

Plaintiffs' position seems to be that they — despite apparently having taken no legal

---

[6] Plaintiffs' memorandum of law does suggest that their Complaint contains such allegations, referring to the "State Defendants' *literal* taking of Plaintiffs' property and handing it over to Long Hill, wh[ich] was acting at the behest and direction of the State Defendants." (Pls.' Mem. 12 (emphasis added).)  Plaintiffs' use of the word "literal" is curious, as the Complaint plainly does not allege that the State Defendants ever condemned or occupied the Premises.  Nor does the Complaint allege that the State Defendants ever directed Long Hill to collect revenue, or withhold rent from Plaintiffs, or do anything else; it merely asserts that Lawitz stated that DOH had "'no objection to [Long Hill's] use of [a] portion of operational revenue to pay for its services.'"  (Compl. ¶ 67.)  The Fourteenth Amendment's state-action doctrine does not require Long Hill's alleged wrongs to be attributed to the State Defendants based on such assertions.  *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) ("[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." (internal quotation marks omitted)).

[7] The brief portion of Plaintiffs' memorandum of law purportedly addressing Plaintiffs' due process claim is representative of the doctrinal confusion permeating Plaintiffs' submissions in this case.  That section, introduced by the heading "Defendants' Taking Violated Plaintiffs' Due Process Rights; Thereby Warranting Compensation," first recites the requirements of the Takings Clause, then notes that the Takings Clause's requirements are enforceable against the States, and finally cites procedural due process cases involving the suspension of licenses — all without any attempt to apply these principles to the case at bar.  (Pls.' Mem. 17-18.)  In light of Plaintiffs' insistence that their due process claims are *not* based on the State Defendants' actions or inactions with respect to licensing (*id.* 1), it is difficult to know what to make of this discussion.

action against Long Hill and having made no request that State Defendants assist them in

recovering rental income from Long Hill — were entitled to have the State Defendants intervene

in the private transactions between Long Hill and the residents of the Adult Home in order to

redirect funds from Long Hill to Plaintiffs, and that Plaintiffs were denied this property interest

without due process of law.  This position cannot be sustained.  Just as substantive due process

does not "require[] the State to protect the life, liberty, and property of its citizens against

invasion by private actors," *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189,

195 (1989), it is unusual for state law to create cognizable property interests (triggering

procedural due process protection) in the enforcement of laws restraining one private party from

injuring another, *see Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) (holding that

Colorado law did not create a property interest in police enforcement of a restraining order), and

procedural due process certainly is not triggered absent "a legitimate claim of entitlement . . .

[whose] dimensions are defined by existing rules or understandings that stem from an

independent source such as state law," *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Plaintiffs do not identify any State law or understanding that requires the State Defendants to

interject themselves into a landlord-tenant dispute between private parties; to the contrary,

Plaintiffs' general counsel apparently understood that Plaintiffs' proper means of recourse was to

"'commence legal action to receiver [sic] [Plaintiffs'] funds'" (Compl. ¶ 69).

 Thus, in the absence of an allegation of any cognizable property interest, Plaintiffs' due

process claim is dismissed, without prejudice, for failure to state a claim.[8]

---

 [8] The Court need not consider the State Defendants' alternative argument that Plaintiffs
fail to state a due process claim because they did not bring a postdeprivation Article 78
proceeding before suing in federal court (Defs.' Mem. 14-15), but notes that it is at least
arguable that Plaintiffs' claim should be dismissed for failure to allege that such a

D.  Other Federal Claims

Plaintiffs' "Second [Section] 1983 Claim Against the State Defendants" alleges that

Defendants' actions "are in violation and circumvention of the letter and spirit of the governing

State statutes and regulations."  (Compl. ¶ 85.)  However, "a violation of state law is not

cognizable under § 1983," *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir. 1985); *see also*

*Shannon v. Selsky*, No. 04-CV-1939, 2005 WL 578943, at *3 n.5 (S.D.N.Y. Mar. 10, 2005), and

therefore this allegation fails to state a claim.

Plaintiffs' Complaint also states that the instant lawsuit is "a civil rights action under the

Fourth . . . Amendment[]" (Compl. ¶ 1), but it makes no allegation that the State Defendants

conducted an unreasonable search or seizure, and therefore fails to state a Fourth Amendment

---

postdeprivation remedy would be insufficient process, especially to the extent that Plaintiffs' due process claim is based on State Defendants' delay in issuing an operating certificate to TZ Manor.  *See Terio v. Johann*, No. 05-CV-5918, 2006 WL 2819659, at *7 (S.D.N.Y. Sept. 29, 2006) ("Since Plaintiff only alleges that he was prejudiced by the delayed procedure — and since he could have brought an Article 78 proceeding in state court challenging that delay — Plaintiff's procedural due process claims are dismissed."); *id.* ("Plaintiff does not allege that the state procedures in place, if strictly complied with, would be insufficient due process under the Fourteenth Amendment.  Furthermore, state procedures gave Plaintiff an avenue for post-deprivation relief: an Article 78 proceeding in state court challenging the denial of his application."); *Gabris v. N.Y. City Taxi & Limousine Comm'n*, No. 05-CV-8083, 2005 WL 2560384, at *3 (S.D.N.Y. Oct. 12, 2005) ("It appears that . . . plaintiff . . . may initiate an Article 78 proceeding in New York Supreme Court . . . .  Plaintiff does not allege any facts demonstrating that the available state remedies are in any way inadequate. . . .  Therefore, since New York provides a post-deprivation remedy, and plaintiff does not indicate that he has availed himself of this remedy, he cannot claim that he was deprived of due process." (internal citations omitted)).  *But see Hamad v. Nassau County Med. Ctr.*, 191 F. Supp. 2d 286, 299-300 (E.D.N.Y. 2000) ("Defendants . . . contend that Plaintiff's due process claims must be dismissed because Plaintiff fails to implicate the adequacy of the pertinent administrative process or an Article 78 proceeding. . . .  [I]t is difficult to ascertain at this juncture the adequacy of the administrative process afforded Plaintiff . . . .  Whether [the] denial [of privileges alleged by Plaintiff] constitutes 'random unauthorized acts by state employees' or a deprivation based on 'established state procedures' has not been discussed by the parties and is unclear to the Court.  As such, the Court cannot determine, at this time, the sufficiency of Plaintiff's administrative hearing or whether the available state procedures would have provided an adequate remedy.").

claim.

E.  State Law Claims

Having dismissed all of Plaintiffs' federal claims, the Court must determine whether to exercise supplemental jurisdiction over Plaintiffs' state law claims that the State Defendants are liable for "tort[i]ously interfer[ing] with Plaintiff's [sic] contractual rights" (*id.* ¶ 103), for "unjust[] enrich[ment]" (*id.* ¶ 109), and for "rent, taxes and use and occupancy" on some unspecified theory (*id.* ¶ 106).  As these latter two claims are brought "[a]gainst [a]ll Defendants," and as there is no independent basis for original jurisdiction over Plaintiffs' claims against Long Hill (as the claims are based on state law and the Parties are non-diverse), the Court will also consider whether to exercise supplemental jurisdiction over those claims.

"The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c)(3).  "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction."  *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (internal citations and quotation marks omitted).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The Court finds that nothing distinguishes the instant case from "the usual case."  All of Plaintiffs' federal claims are being dismissed not only prior to trial but also prior to any discovery.  There is no reason to believe that judicial economy, convenience, or fairness would

be served by this Court exercising supplemental jurisdiction over Plaintiffs' state law claims, and to do so would surely be inconsistent with the value of comity.

### III.  Conclusion

For the reasons stated herein, the State Defendants' Motion to Dismiss is granted. Plaintiffs' Fifth Amendment Takings Clause claim is dismissed without prejudice, for lack of subject matter jurisdiction.  Plaintiffs' due process claim is dismissed without prejudice, for failure to state a claim.  Plaintiff's Section 1983 claims based on state law are dismissed with prejudice, for failure to state a claim.  The Court declines supplemental jurisdiction over Plaintiffs' state law claims against all Defendants; all state law claims are therefore dismissed without prejudice.  Plaintiffs are given thirty days to submit an amended complaint; otherwise, the case will be closed.  The Clerk of Court is respectfully directed to terminate the pending Motion (Dkt. No. 16).

SO ORDERED.

Dated:      July 28, 2009
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

21

Service List (By ECF):

Sanford F. Young, Esq.
Law Offices of Sanford F. Young, P.C
225 Broadway, Suite 2208
New York, NY  10007
sanfordy@aol.com

Scott J. Spiegelman, Esq.
Office of the Attorney General of the State of New York
120 Broadway
New York, NY  10271
scott.spiegelman@oag.state.ny.us

James A. Shannon, Esq.
O'Connell & Aronowitz, Attorneys at Law
54 State Street
Albany, NY  12207
jshannon@oalaw.com